Minshall, J.
This is a proceeding in quo warranto, challenging the right of the defendants to act as a board of commissioners of the-city of Akron. It is claimed that the act- creating the board, and under which the members of the board assumed to act, is invalid on the ground that the act is a special one conferring corporate power. The relator cites and relies on sections one and six of the thirteenth article of the constitution. By the first section, it is provided. “The general 'assembly shall pass no special act conferring corporate powers,” and by the sixth, that it “shall provide for the organization of cities and incorporated villages by general laws.” The act was passed April 20, 1893, and is entitled, “An act to amend an act entitled ‘An act to provide a more efficient government for cities having a population not less than 33,000 and not more than 34,000 inhabitants, passed March 5, 1891.” The amended act was repealed, so that the only question is, whether the classification of cities made by this act, is valid. The classification includes “All cities except cities of the second class, third grade, ‘a, ’ which, according to the federal census *8 of 1890, had, or which according to any subsequent federal census, shall have not less than 27,000 and not more than 34,000.” There would be but little, if any, ground for the claim, had there been no exception in the act, unless we depart from a long line of decisions on the subject, and deny to the legislature, what is settled by these decisions, the power to classify the cities of the state. It will be observed that the class is quite an extensive one; it includes all cities having between 27 and 34 thousand inhabitants, a difference in population larger that many of the cities of the state, and-the class now includes several cities ; and, referring’ to the last federal census, and considering the probable growth of cities in the mean time, based on their growth in the last decade, may include many more at the next federal census. The power of the general assembly to classify cities and enact laws applicable to particular classes so formed, cannot now be successfully questioned. It should be regarded as sta/re decisis. Such legislation is not regarded as contravening either of the provisions above cited.
When a class is formed so as to include any city of the- state wherever situated, coming within the class, the act by which it is formed is, within the sense of the constitution, a general law. State v. Nelson, 52 Ohio St. 88.
It is not to be supposed that, by either of the above provisions, it was intended that the cities and villages of the state were to be governed by one uniform system of laws, applicable alike to each and every city and village in the state. It would be impossible to do so, and adequately provide for all the necessities of the various cities of the state, differing as they do in population, pur *9 suits, and locality; and it is fair to presume that this was as well understood by those who made and adopted the constitution as by those of the present time. And that such was not their understanding’ of the provisions of that instrument, is shown by the fact that, at the first general assembly that met after its adoption, an act was passed “To provide for the organization of cities and incorporated villages,” in which they were classified for the purposes of legislation. 50 Ohio Laws, 237. The language of the act on this subject is, section 40, that, “In respect to the exercise of certain corporate powers, and to the number, character, powers and duties of certain offiers, municipal corporations are, and shall be divided into the .classes following: Cities of the first, and cities of the second class ; incorporated villages and incorporated villages for special purposes.” The next section defines the classes. It is based upon population, and directed to be ascertained in a mode and manner that has prevailed to this time. In 1879, the cities of the state having outgrown the classification of 1852, the general assembly, to meet the new conditions and wants of the cities, adopted a new classification, by which the population necessary for each class was changed, and the classes were divided into grades, also based on population. This classification was carried into and forms part of the Revised Statutes, section 1546 et seq. The power exercised in making the classification of 1879 was not the assumption of any new power of the legislature. It was the same as that exercised in 1852. The classification was a more extensive one, but that did not and could not change the nature and character of the power itself. If the legislature had power *10 to make the classification of 1852, it had. power to make that of 1879, and to amend it or to change it as in its wisdom might seem best. A construction of the constitution sustaining’ the power of the legistature to classify the municipalities of the state, that has been approved and followed by the decisions of this court for near half a century, should not be overturned, simply because the court as now constituted, may think that its predecessors were in error on the subject, and sustained laws that should have been held invalid. A ' consciousness of our own fallibility ought possibly to suggest that we may be, and not that our predecessors were, in error. Though hardly necessary, we will here refer to some of the cases that have been decided sustaining the classification of cities. State ex rel. v. The Judges, 21 Ohio St., 1; State ex rel. v. Mitchell, 31 Ohio St., 592; State v. Brewster, 39 Ohio St., 653; State v. Pugh, 43 Id., 98; State ex rel. v. Hawkins, 44 Id., 108; State ex rel. v. Hudson 44 Id., 137; Marmet v. State, 45 Id., 63; McGill v. State, 34 Id., 228; State ex rel. v. Wall; 47 Id., 499; State v. Toledo, 48 Id., 112; State ex rel. v. Cincinnati, 52 Id. 419. What was said on the subject of the classification of cities in Hixson v. Burson, 54 Ohio St., 470, was notgermain to the case considered. It was not concurred in by all the judges; and, by a rule of this court, adopted in 1857, (6 Ohio St., Note), the concurrence of the judges in an opinion is limited to the part necessary to the decision and expressed in the syllabus.
But it is in the province of the court to determine whether a given act is an exercise of the power of classification, or, on the face of the law, is shown to be merely arbitrary, and in fact, no classification at all. This has been done in a *11 number of cases. Thus in State v. Pugh, 43 Ohio St. 98, the law required action to be taken by a certain board, in five days; this, in connection _ with other provisions, showed, that the only city that could comply with the law, was Columbus, and as certainly identified that city as if it had been named, and therefore the court held the law to be a special one and invalid. So in State ex rel. v. Smith, 48 Ohio St., 211, the law required the bonds of certain officers to be approved by the Superior Court, when it appeared that Cincinnati was the only city that had, or could have a super ior court without additional legislation, and for this reason the law was held to be special and invalid as it conferred corporate power. So in Costello v. Wyoming, 49 Ohio St., 202, the act applied to such villages only in a county having a city of the first grade of the first class, as had not improved their sidewalks under the provisions of certain sections of the statutes, and it was held, that the fact of having sidewalks so unimproved did not furnish a proper ground for classification, and the act was held invalid. So, where the class is limited to the number of inhabitants of a particular city at the last federal census; or to such a. difference in population as to preclude the possibility of its ever applying to other cities at any future census, such acts have been held invalid for the reason that such provisions do not constitute classification in any proper sense of the term. Such acts simply identify a particular city by precluding their application to any ‘other. State ex rel. v. Anderson, 44 Ohio St., 247; Kenton v. State, 52 Ohio St., 59. On the question whether a particular classification is general or not, the rule deducible from the cases is, to consider whether *12 other cities may at a future time, without the aid of additional legislation, enter the class; for it is the possibility that other cities may enter a certain grade of a class, and not the certainty that they will, that gives to a law creating the grade a general character. State v. Smith and State v. Toledo, supra.
But there are no such difficulties with respect to 'the act under consideration. The classification is based on population, and admits of a difference of 7,000 inhabitants among the different constituents of the class, and will, at the next federal census, be in all probability one of the largest classes in the state. Hence the question in this case resolves itself into this, whether the exception of third grade “a,” invalidates what, under the previous decisions of this court, would otherwise be a valid classification of cities for the purpose of, organization and government. We think not. Third grade “a,” was formed by an act adopted March 5, 1891, (88 Ohio Laws, 77); and included all cities having a population of more than 28 and less than 33 thousand inhabitants on the first day of July, 1890, as ascertained by the last federal census, so that cities of this grade would be included in the class in question. Now, if it was not competent to the 'legislature to make this exception to the class formed April 20, 1893, then it is no exception; and the class then formed will include all cities in the state within the limits of the population named; for it was entirely competent to the legislature to make a class that would include all the cities of the state having a population of not less than 27 and not more than 34 thousand inhabitants. Nor can we infer that if the legislature had known that the exception *13 could not be made, the act without the exception would not have been adopted. We should rather infer that in the j udgment of the legislature, there was a necessity for such a class, superior to its creation with an exception of third grade “a” ; and made the exception in a mistaken apprehension as to its powers. The argument is that the act leaves a grade within a grade. But it must be observed that this is what was done when third grade “a” was formed. 88 Laws, 159. It included, according to its maximum and minimum population, all of the first grade, and all of the second above 28,000. If this could not be done for the reason assigned, then third grade “a” for the same reason never was a valid grade, and its exception amounts to nothing. We are not without some precedent in this regard. On April 16, 1883, an act was passed, providing that “In each city of the first, second and third grades of the first class, and in cities of the second class, first grade, and in cities having a population of twenty thousand, and not more than thirty thousand, and in cities having a population of fifteen thous- and four hundred and thirty-five by the last federal census, there shall be a board of tax commissioners. ” 80 Laws, 124. In State v. Brewster, 39 Ohio St., 653, the court sustained the act so far as it was general, saying: “The act of April 16. 1883, as we have seen, applies to cities of the first class, and cities of the first grade of the second class. * * * Being constitutional to this extent, we do not think the validity is affected by the fact —if fact it be — that it is invalid as to other cities referred to therein. We would not be justified in saying that it is probable its passage was made to depend on the fact that such minor cities were em *14 braced by it. Hence, the act is valid as to the cities named, even if invalid as bo the minor cities, which are not brought within any recognized or permissible classification.”
The only difference in the two acts is, that in one there is an exclusion, and in the other there was an inclusion, of certain cities; and, it would seem, that if one may be disregarded and the law held valid, the other may as well. It is the uniform policy of the courts always to sustain acts if they can, particularly so, where, to do otherwise, would result in great public confusion and inconvenience. if not anarchy. The legislature is not now in session and will not be for two years. If the law in question were held invalid, two at least of the principal cities of the state would be deprived of any municipal government whatever. No doubtful considerations as to the power of the ■ legislature to pass the act in question, could atone for such consequences as these. It is the duty of courts not to overlook such considerations. If the cities of Youngstown and Akron are not provided with* a government by this act, no one has been able to point out the class to which they belong and under which they may be governed, and we know of no one.

Petition dismissed.

Burket and Shauck, JJ., dissent.